Peter Strojnik, Esq. – Arizona Bar No. 006464
**STROJNIK, P.C.**
2415 East Camelback, Suite 700
Phoenix, Arizona 85016
Telephone: 602-524-6602
Facsimile: 602-296-0135
E-mail: strojnik@aol.com
*Attorney for Creditors Sabia*

# IN THE UNITED STATES BANKRUPTCY COURT

# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| In The Matter of: | In Proceedings Under Chapter 7 |
| DARREN L. SCOTT and KATHRYN A. SCOTT aka KATHRYN A. RUSSELL, | NO. 3:13-bk-02829-DPC |
| Debtors, | Adversary No. 3:13-ap-01026-DPC |
| CHRIS SABIA and PAMELA SABIA, husband and wife, | **ADVERSARY COMPLAINT** |
| Plaintiffs, | **To Determine Dischargeability - § 11-U.S.C. 523(a)(6)** |
| vs. | |
| DARREN L. SCOTT and KATHRYN A. SCOTT aka KATHRYN A. RUSSELL, | |
| Defendants. | |

## INTRODUCTORY STATEMENT

This action is brought as a result of the baseless lawsuit filed and prosecuted by Defendants against Plaintiffs in March of 2010 in the Maricopa County Superior Court Cause Number No. CV 2010-050329 styled *Scott v. Sabia* ("Underlying Lawsuit"). The

Underlying Lawsuit caused the Sabias extreme financial hardship and caused and/or significantly contributed to Mrs. Sabia's diagnosed multiple sclerosis. The allegations against the Sabias in the Underlying Lawsuit were commenced and prosecuted without probable cause, intentionally and knowingly so, and asserted with the intent of harming Plaintiffs. Therefore, Plaintiffs bring this Complaint to determine dischargeability of and to liquidate Plaintiff's claims against Debtors for abuse of process. Plaintiff does not yet bring the action for malicious prosecution since the underlying case has not yet been completed.

**GENERAL ALLEGATIONS**

1. Plaintiffs are husband and wife residing in Maricopa County.

2. Defendants Darren Lee Scott and Kathryn A. Scott (hereinafter "Defendants Scott" or the "Scott Defendants"), are husband and wife. At times relevant hereto, Defendants Scott were represented by Michael W. Wright, Esq. of the firm Sherman & Howard LLC, a Maricopa County law firm. Defendants Wright and the firm of Sherman & Howard are jointly referred to as "Lawyers".

3. Defendants Scott have been involved, directly and through their various companies, in more than 30 lawsuits and are professional litigators.

4. At times relevant hereto, Lawyers represented Defendants Scott in the Underlying Lawsuit.

5. At all times relevant hereto, Defendants Scott and Lawyers knew that the salient parts of the allegations against the Plaintiffs in the Underlying Lawsuit were false, fraudulent and perjurious.

6. Defendants Scott and Lawyers agreed amongst themselves to conduct the Underlying Lawsuit in a manner that would inflict harm upon Plaintiffs.

7. During the conduct of the Underlying Lawsuit, Defendants Scott and Lawyers acted as each other's agents, co-conspirators and aiders and abettors.

8. Defendants caused the events to occur in Maricopa County.

**FACTS LEADING UP TO THE FILING
OF THE UNDERLYING LAWSUIT**

9. In 2005, Plaintiffs Sabia purchased Lot 7 of the Las Ventanas Subdivision ("Subdivision") in Cave Creek, Arizona.

10. In early 2007, Defendants Scott made an offer to purchase Lot 7 from Plaintiffs Sabia.

11. On January 18, 2007, Plaintiffs and Defendants executed a Vacant Land/Lot Purchase Contract.

12. There is a large expanse of land immediately adjacent to the West of Lot 7. The use of the land immediately adjacent to the West of Lot 7 was immaterial to Scotts' decision to purchase Lot 7.

13. At the time of the purchase of Lot 7, the Town of Cave Creek was considering the expansion of its water treatment facilities on Tract C. Tract C is a 5 acre parcel of

land at the far NW corner of the Subdivision. The relative positions of Lot 7, the large expanse of land West of Lot 7 and Tract C are reproduced here:



14. At the time of the purchase of Lot 7, Defendants Scott knew that the Town of Cave Creek considered expanding its water treatment facility on Tract C.

15. At the time prior to the close of escrow on Lot 7, Defendants Scott received a Plat Map which disclosed to The Scotts that "tract C may serve as a future town wastewater treatment site".

16. The use of Tract C as a future wastewater treatment site would have no impact on the use, enjoyment or value of Lot 7; indeed, Defendants' fair market expert testified that the fair market value of Lot 7 was $3,000.00 <u>more</u> than the Purchase Price.

17. On January 26, 2007, the Scotts executed the Authorization to Close in which Defendants Scotts admitted that they have "received all documentation as referred to in subject contract/escrow instructions and hereby approve same". This documentation included the Plat Map containing the disclosure of the possible use of Tract C as a future town wastewater treatment site.

18. Following the close of escrow, Defendants Scotts built a house on Lot 7.

19. The Town of Cave Creek eventually built a water treatment plant on the 76 acre parcel just West of Lot 7 and not on Tract C.

20. In 2007 and 2008, the real estate market crashed, and the value of Defendant Scotts' speculative house on Lot 7 plummeted.

21. Sometime prior to March 9, 2010, Defendants Scott retained Lawyers to determine who, if anyone, could be held responsible for the loss of value of the Scotts' speculative house.

Case 3:13-ap-01026-DPC    Doc 1    Filed 09/12/13    Entered 09/12/13 09:31:42    Desc
Main Document    Page 5 of 11

22. Defendants Scotts and Lawyers knew that a lawsuit could be filed against the Plaintiffs only if one of the following circumstances were present:

   a. The Plaintiffs breached the Vacant Land/Lot Purchase Contract; or

   b. The Plaintiffs somehow induced the Scotts into purchasing Lot 7 with false information, or with failure to disclose material information, that was not also known to the Scotts.

23. Prior to filing the Underlying Lawsuit, Defendants Scott and Lawyers knew that Plaintiffs Sabia did not breach the Vacant Land/Lot Purchase Contract.

24. Prior to the filing of the Underlying Lawsuit, Defendants Scott knew that Plaintiffs Sabia did not induce the Scotts into purchasing Lot 7 with false information or with failure to disclose information that was not also known to Defendants Scott.

25. On March 9, 2010, Defendants Scotts and Defendants Lawyers filed a Verified Complaint against Plaintiffs Sabia. In the Verified Complaint in the Underlying Lawsuit, Defendants falsely claimed that Plaintiffs Sabia committed the torts and breaches and that they were damaged in the amount of $2 million by the Sabias:

   a. Actual Fraud; and

   b. Fraudulent Concealment; and

   c. Fraud in the Inducement; and

   d. Negligent Misrepresentation; and

   e. Negligence per se; and

   f. Breach of Contract; and

g. Breach of Contract (Implied Covenant of Good Faith and Fair Dealing).

26. Defendants Scotts and Lawyers knew that the material allegations in their Verified Complaint were false, fraudulent and perjurious.

27. Through the litigation process in the Underlying Lawsuit, Plaintiffs Sabia were able to expose the falsity, the fraud and the perjury of the accusations in the Verified Complaint.

28. Once the falsity, the fraud and the perjury of the accusations in the Verified Complaint became exposed, Defendants Scotts and Lawyers filed their First Amended Verified Complaint on April 6, 2011.

29. Defendants' accusations in the First Amended Verified Complaint in the Underlying Lawsuit changed the story, but the material allegations remained false, fraudulent and perjurious. In it, Defendants Scott and Lawyers falsely alleged that Sabia's committed:

    a. Actual Fraud; and

    b. Negligent Misrepresentation; and

    c. Breach of Contract; and

    d. Breach of Contract (Implied Covenant of Good Faith and Fair Dealing).

30. In the Underlying Lawsuit, Defendants Scotts committed perjury including, without limitation, all of the following:

a. False sworn statements in the Verified Complaint relating to Plaintiff's knowledge that the Town of Cave Creek intended to build the water treatment plant on the lot immediately to the West of Lot 7; and

   b. False sworn statement that the information regarding the Town's plans to build the water treatment plant on the lot immediately to the West of Lot 7 was important, or material, to their decision to purchase Lot 7; and

   c. That the Scotts had not been involved in any lawsuits; and

   d. That the Scotts did not know that the Town intended to build the water treatment plant on Tract C.

   e. That the Scotts relied on any statement by Plaintiffs in purchasing Lot 7; and

   f. That the value of Lot 7 was less than the purchase price.

31. Defendants' conduct was lacking in fundamental honesty and fair play in the general and business life of members of society.

32. A trial to a jury was held in May of 2012. At the completion of the trial, the Jury took one hour and one minute to find in favor of Plaintiffs Sabia on all counts.

## COUNT ONE
(Abuse of Process)

33. Plaintiffs reallege all allegations heretofore set forth.

34. At the time of the filing of the lawsuit against the Plaintiffs, Defendants Scott had become professional litigators having been involved in more than 30 lawsuits either in their personal capacities or through their corporations.

35. Throughout the Underlying Lawsuit, Defendants Scotts and Lawyers engaged in a series of court processes, all flowing one from the other but all distinct and separate.

36. Defendants Scott and Lawyers engaged in definite and specific acts aimed at defrauding the Plaintiffs and the judicial system as more fully described above and below in this Complaint.

37. Defrauding Plaintiffs and the judicial system and intentional infliction of emotional distress are illegitimate objectives in the course of the legal process.

38. Defendants Scott knew that their wrongful conduct could cause a wrongly accused person to become subjected to physical and mental suffering which may include, upon information and belief, the development of multiple sclerosis.

39. In fact, Plaintiff Ms. Sabia developed multiple sclerosis as a direct consequence of Defendants' actions.

40. Defendants Scotts engaged into, inter alia, the process of filing the false, fraudulent and perjurious accusations in the pleadings process, the motions and discovery process, and the trial process.

41. Defendants acted willfully with an ulterior purpose not proper in the regular conduct of the proceedings.

42. Defendants abused the various processes in the Underlying Litigation by misleading the Court and the Parties, including Plaintiffs herein.

43. The process of filing the false, fraudulent and perjurious accusations in the pleadings process, the motions and discovery process, and the trial process cannot be logically

explained without reference to the Scotts and the Lawyers improper and ulterior purposes.

44. The legal process is not designed to satisfy Defendants' ill will toward Plaintiffs.

45. Plaintiffs have been damaged by Defendants' abuse of the process by, inter alia, Plaintiffs' physical pain and physical suffering caused by Ms. Sabia's development of multiple sclerosis. Plaintiffs' damages further include their costs and attorney's fees incurred in the defense of Defendants' abuse of the process and other damages to be proven at trial, but in no event less than $2,500,000.00.

WHEREFORE, Plaintiffs pray for relief as follows:

46. Defendants consciously pursued a course of conduct knowing that it created a substantial risk of significant harm to the Sabias. Their conduct entitles Plaintiffs to an award of punitive damages on the basis of the following factors: (1) the reprehensibility of Defendant's conduct and the severity of the harm likely to result, (2) the harm that actually occurred, (3) the duration of Defendants' misconduct, (4) the Defendant's awareness of the harm or risk of harm, and (5) Defendants' concealment of it.

WHEREFORE, Plaintiffs pray for relief as follows:

A. For Judgment against Defendants under this Count in an amount to be proven at trial but in no event less than $2,500,000.00; and

B. For punitive damages in an amount to be proven at trial, but in no event less than $2,500,000.00.

C. For Judgment declaring that Defendants' Scott's acts of malicious prosecution caused Plaintiffs willful and malicious injury; and

D. For Judgment declaring the actual damages of no less than $2,500,000.00 and punitive damages in an amount no less than $2,500,000.00 under this count non-dischargeable in bankruptcy; and

E. For such other and further relief as the Court may deem just and proper.

RESPECTFULLY SUBMITTED this 12th day of September, 2013.

**STROJNIK, P.C.**

*/s/ Peter Strojnik*

Peter Strojnik
Attorney for Plaintiffs